UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| PROXICOM WIRELESS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MACY'S, INC. AND MACY'S FLORIDA STORES, LLC,<br><br>    Defendants. | CASE NO.: 6:18-cv-00064-RBD-GJK |

**JOINT CLAIM CONSTRUCTION STATEMENT**

Pursuant to the Case Management and Scheduling Order (D.I. 33), Plaintiff Proxicom Wireless, LLC ("Proxicom") and Defendants Macy's Inc. and Macy's Florida Stores, LLC ("Macy's") (collectively, the "parties") submit this Joint Claim Construction Statement.

Table 1 below lists agreed claim constructions, which the parties respectfully request that the Court adopt.  Table 2 lists claim terms that are disputed on a single page for the Court's convenience.  Table 3 lists the exhibits included with this Statement.  Table 4 lists each party's proposed construction, intrinsic evidence, and extrinsic evidence citations for these disputed terms.

The parties have agreed that expert testimony will not be submitted with the claim construction briefing and that no live testimony will be presented at the Markman hearing. Depending on the Court's construction, the parties may incorporate one or more claim constructions in summary judgment motion(s).

## JOINT CLAIM CONSTRUCTION CHART

### TABLE 1: List of Agreed Terms

| # | Claim Term | Agreed Construction |
|---|---|---|
| 1 | "entity" ('359 Pat., cl. 1, 14; '592 Pat., cl. 19) | A legal entity, such as an individual person or a business. (See '359 Pat., Col. 8:28–29.) |
| 2 | "reward for an entity associated with the first wireless device's participation in a loyalty program" ('359 Pat., cl. 1, 14; '592 Pat., cl. 19) | "reward for an entity that is associated with the first wireless device, wherein the reward is for that entity's participation in a loyalty program" |
| 3 | "modified identification information" ('749 Pat., cl. 1, 17, 21) | "changed identification information" |

### TABLE 2: List of Disputed Terms (table of Parties' respective construction and evidence is below)

| # | Claim Term |
|---|---|
| 1 | **"loyalty program"** ('359 Pat., cl. 1, 14; '592 Pat., cl. 19) |
| 2 | **"electronic commerce transaction"** ('359, cl. 1, 14) |
| 3 | **"upon an occurrence of a predetermined event coordinated with said central server"** ('749 Pat., cl. 1) |
| 4 | **"within a specific application on the second wireless device"** ('749 Pat., cl. 1) |

**TABLE 3:  Table of Exhibits**

| Exhibit Number | Exhibit Contents |
|---|---|
| 1 | Provisional Application No. 61/095,001 |
| 2 | Provisional Application No. 61/095,359 |
| 3 | J. Nunes & X. Dreze, *Your Loyalty Program is Betraying You*, HARVARD BUSINESS REVIEW (April 2006, Harvard Business School Publishing Corp.). |
| 4 | B. Sharp & A. Sharp, *Loyalty Programs and Their Impact on Repeat-purchase Loyalty Patterns*, INT'L JOURNAL OF RESEARCH IN MARKETING 14 (1997) 473–486. |
| 5 | Excerpts from ENCYCLOPEDIA OF DATABASE SYSTEMS (2009 Springer Science + Business Media, LLC, Ling Liu & M. Tamer Ozsu, eds.) e-Commerce Transactions. |
| 6 | Excerpts from INTERNATIONAL STANDARD ISO 10008, First Edition 2013-06-01. |
| 7 | Excerpts from Annex 4. The OECD Definitions of Internet and E-commerce Transactions (Measuring the Information Economy 2002). |
| 8 | Excerpts from AMERICAN HERITAGE DICTIONARY (2011). |
| 9 | Excerpts from THE CONCISE OXFORD ENGLISH DICTIONARY (2008). |
| 10 | Excerpts from WEBSTER'S II DICTIONARY (OFFICE EDITION) (3d ed., 2005). |
| 11 | Declaration of Chris J. Coulson Regarding Exhibits to Joint Claim Construction Chart |

Table 4:  Table of Disputed Terms (Including Proposed Constructions and Evidence)

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| 1 | "loyalty program" ('359 Pat., cl. 1, 14; '592 Pat., cl. 19) | "a marketing program designed to encourage customers to continue to shop at or use the services of businesses associated with the program"<br><br>**Evidence**<br><br>"Finally, the transaction details may be stored by the server, or sent to a thirdly party server for tracking spending habits of that account holder, or customers of that merchant allowing the merchant to track that specific customer's behavior and cater to them in the future with various specials delivered via email, or during their next visit via their device in the form of an electronic coupon. This process can be performed with a goal to help the merchant expose the customer to other products or services the merchant believes the customer might find desirable." '359 Pat.,[1] Col. 13:65–14:7.<br><br>*See also* '359 Pat., Cols. 8:34-52, 14:41-60, 15:4–23 and Figure 11. | "a program where a merchant provides customers enrolled in the program a coupon from the merchant as a reward for making a particular number of repeated purchases from the merchant"<br><br>**Evidence**<br><br>"Alternatively if the consumer is a regular purchaser a loyalty program may provide a coupon upon a particular number of repeated purchases."  '359 Pat., Col. 15:20–23. |

---

[1] The '592 patent is a continuation of the '359 patent and the specifications are substantially identical.  Citation to the disclosure of the '359 patent also refers to the equivalent disclosure of the '592 patent.

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | "Loyalty programs, which provide customers with loyalty incentives such as points redeemable for prizes or discounts, are back in the marketing spotlight." B. Sharp & A. Sharp, *Loyalty Programs and Their Impact on Repeat-purchase Loyalty Patterns*, INT'L JOURNAL OF RESEARCH IN MARKETING 14 (1997) 473–486, at 473. (Ex. 4.)<br><br>"*Loyalty programs are structured marketing efforts which reward, and therefore encourage, loyal behaviour:* behavior which is, hopefully, of benefit to the firm." *Id*. at 474 (italics in original). (Ex. 4.)<br><br>"Fly Buys is a multiple participant program where members can accumulate points from buying from a number of participating store brands across retail categories." *Id*. at 483. "[A] multiple participant loyalty program is likely to attract some new light buyers to any brand in the scheme." *Id*. at 486. (Ex. 4.)<br><br>"American Airlines and America Online jettisoned their joint customer loyalty program." J. Nunes & X. Dreze, HARVARD BUSINESS REVIEW (April 2006, Harvard Business School Publishing Corp.), at 2. (Ex. 3.) | |

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
|  |  | "In some cases, loyalty programs create what marketers call barriers to exit. . . . Take, for example, this reward to Sprint's long-distance phone customers: For every dollar they spend with Sprint, they ear an airline mile redeemable with any of five different airlines. . . . A customer might stick with Sprint even if she became temporarily dissatisfied with the service, because the mileage benefit accrues over time." *Id.* at 3. (Ex. 3.) |  |
| 2 | "electronic commerce transaction" ('359, cl. 1, 14) | **No construction needed, or "electronic interactions for the sale or purchase of good(s) or service(s)"**<br><br>**Evidence**<br><br>"Electronic Commerce Applications and Disclosure<br><br>E-commerce (e-proximity) between two mobile devices<br><br>An example is that of two individuals performing a transaction on the street, a customer and a street vendor. In this example, an individual would see a vendor and their device (enabled with the current invention) would notify them that the vendor was enabled with a device supporting the current invention as well, and capable of electronic payments. The customer, having an account | **"a transaction in which the customer has indicated a desire to make a purchase and pay using the customer's wireless device"**<br><br>**Evidence**<br><br>"The customer, having an account enabled with electronic payments, and wanting an item the vendor has, would press a button or make other input to his phone (or other device) which would indicate they would like to make a purchase and pay using their device (808)." '359 Pat., Col. 11:47–51. |

3

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | enabled with electronic payments, and wanting an item the vendor has, would walk up to the merchant and place their order. Additionally, the customer would press a button on the phone (or other device) which would indicate they would like to make a purchase and pay using their device. The customer's device would then send a message to the central server indicating the customer would like to make an electronic payment to the merchant detected by the device. . . . <br><br>Assuming the two way proximity detection, the server would send a request to the merchant's device indicating the desire for the electronic payment, and a picture of the customer associated with the account on the device. The merchant would conform, on their device, that they have identified the customer and would provide the price or the item (with the price previously inputted) to the device, which would relay this information to the server. **Alternatively, a point of sale device like a cash register could be interfaced to the enabled device and receive the list of purchased items, to use for this step."** App. No. 61/095,359 at 9–10 (emphasis added). (Ex. 2.)<br><br>"In another embodiment, the merchant device may be fixed, but have an internet connection (wireless | |

4

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | or otherwise). Further, in some embodiments, the merchant may be an automated device such as a vending machine. In such a model, a customer may use their enabled cell phone to purchase an item such as a beverage from the machine without the need to insert currency into the machine. . . . The customer may in one model select the item to dispense by input to their phone, or they may simply select to provide payment to the machine allowing them to make the selection manually as is the typical mode of operation today." '359 Pat., Col. 18:34-60.<br><br>*See also* '359 Pat., Cols. 1:55–2:49, 3:40–62, 11:20–12:36, 12:41–13:64, 14:8–39, 17:32–18:64; 20:50–55; 21:21–22:13; 27:19–24 (claim 29); 27:56–28:20 (claims 37–43), and Figures 8A, 8B; App. No. 61/095,359 at 5–6, 9–11 (Ex. 2).<br><br>Commerce: "The buying and selling of goods : business"), 741 (Transact: "To do, perform, carry out, manage, or conduct (e.g., business)." Transaction: "1. The act of transaction or the fact of being transacted." WEBSTER'S II DICTIONARY (OFFICE EDITION) (3d ed., 2005) at 147. (Ex. 10.)<br><br>"**e-Commerce Transactions Synonyms** Electronic commerce transactions; EC transactions<br><br>**Definition** "An electronic transaction is the sale or purchase of goods or services, whether between | |

5

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | businesses, households, individuals, governments, and other public or private organizations, conducted over computer mediated networks. The goods and services are ordered over those networks, but the payment and the ultimate delivery of the good or service may be conducted on or off-line." ENCYCLOPEDIA OF DATABASE SYSTEMS (2009 Springer Science + Business Media, LLC, Ling Liu & M. Tamer Ozsu, eds.) e-Commerce Transactions. (Ex. 5.) | |
| | | "**3 Terms and Definitions** For the purposes of this International Standard, the terms and definitions given in ISO 9000 and the following apply. **3.1 business-to-consumer electronic commerce transaction B2C ECT** set of interactions between an *organization* (3.2) and a *consumer* (3.3) for the provision of a *product* (3.4) facilitated online" INTERNATIONAL STANDARD ISO 10008, First Edition 2013-06-01 (italics in original). (Ex. 6.) | |
| | | Annex 4. The OECD Definitions of Internet and E-commerce Transactions (Measuring the Information Economy 2002), cited by the Encyclopedia of Database Systems. (Ex. 7.) | |
| 3 | "upon an occurrence of a predetermined | **No construction needed, or "upon an action or occurrence that is determined in advance that** | "upon an action or occurrence that is determined in advance that is coordinated at the time of the |

6

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | event coordinated with said central server" ('749 Pat., cl. 1) | is coordinated with said central server"<br><br>**Evidence**<br><br>**'749 Pat., Claim 2:** "The method of claim 1 wherein the predetermined event is one or more of:<br>an elapsed time;<br>a number of uses of the identifier; and /or<br>a step in a process." '749 Pat., Col. 23:56–60.<br><br>**'749 Pat., Claim 3:** "The method of claim 1 wherein the step of changing the user or entity identification information at said second wireless device is further:<br>effected by a rule-based generation local to the application,<br>downloaded from the server directly, or synchronized such that it is coordinated with predetermined receiving and transmitting times." '749 Pat., Col. 23:61–67.<br><br>"Since the server and the WWAN is involved with all mobile devices, coordination of the broadcasting periods and the searching periods for the short range radios is possible. This can be based on a common reference time such as that provided by most cellular systems, any the time of day clocks inherently within mobile devices. This | event with the central server"<br><br>**Evidence**<br><br>"Since the server and the WWAN is involved with all mobile devices, coordination of the broadcasting periods and the searching periods for the short range radios is possible. This can be based on a common reference time such as that provided by most cellular systems, any the time of day clocks inherently within mobile devices." '749 Pat., Col. 16:28–33. *See also* Figure 12. |

7

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | allows for reduced power consumption …. If no coordination is achieved, then the short range receivers in each device must be scanning for transmitted identifiers much more often and for longer durations. Utilizing a common timing base, and the central server to notify the devices of a coordination approach for 'active times' and 'non-active times' and will allow for the devices to minimize the power consumption in the transmission of and scanning for identifiers. This approach also allows for synchronizing the update of each device's identifier … coordinated with the central server. The 'non-active times' may be used as 'boundaries' over which the changing identifiers may be updated. This update may be based on either direct communication with the server, or rule and algorithm based updates previously coordinated with the central server so as to minimize server messaging, but allowing the updates to remain synchronized to the server such that the device and the server are always associating the same identifier between them." '749 Pat., Col. 16:28–52.<br><br>"The server in some cases providing a continuously or periodically changing account or device identifier to a specific application on a device to enhance the privacy of the identity of that device;<br>The changing of the identifier may be effected by | |

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | a rule based generation local to the application, or may be downloaded from the server directly; and/or
The update of the identifier being synchronized to such that it is coordinated with predetermined scanning and broadcasting periods allowing for a known update boundary." *Id.*, Col. 22:36–47

"a method uses the mobile device's time of day derived from the network or other reference …. Synchronizing identifier transmission timing to save power from WWAN network parameters obtained for the server; Coordinating any identifier updates to this same timing source;" '749 Pat., Col. 22:48–63.

*See also* '749 Pat., Cols. 6:6–11; 16:58–17:17 19:62–20:52, 22:5–67, and Figures 1, 3, 4, 7 and 13; App. No. 61/095,001 at 3, 5, 8, 12–14 (Ex. 1).

"Coordinate: 1. bring the different elements of (a complex activity or organization) into an efficient relationship." CONCISE OXFORD ENGLISH DICTIONARY (2008), at 314. (Ex. 9.)

"Predetermine: establish or decide in advance." *Id.*, at 1130. (Ex. 9.) | |
| 4 | "within a specific application on the second | "handled by a specific program or algorithm executing on the second wireless device" | "within computer software instructions and data on the second wireless device" |

9

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | **wireless device"** ('749 Pat., cl. 1) | **Evidence** "Applications running on a device may also interact with the server to perform various functions, for example retrieving information associated with an entity or device…. As the server may be running applications which perform more function than just the retrieval of content…." '749 Pat., Col. 3:19–32. "…the patron device 202 in this example may …continue to view the content being provided by the server 100…. Content may include text, pictures, web pages, application software such as games, informative display applications, or other content such as audio or video to be offered to the user's device as well." '749 Pat., Col. 7:38–45. "Referring now to FIG. 12 a timing map reference for scanning times and dormant times for devices is shown. In one embodiment, it is desired that the power consumption and scan timing for the devices in a cellular network be reduced. . . . The 'non-active times' may be used as 'boundaries' over which the changing identifiers may be updated. This update may be based on either direct communication with the server, or rule and algorithm based updates previously coordinated | **Evidence** "Memory provides volatile storage for computer software instructions and data used to implement an embodiment of the present invention (e.g., applications programs and the like). Disk storage can provide non-volatile storage for computer software instructions and data used to implement an embodiment of the present invention." '749 Pat., Col. 6:6–11. |

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | with the central server so as to minimize server messaging, but allowing the updates to remain synchronized to the server such that the device and the server are always associating the same identifier between them." '749 Pat., Col. 16:24–52.<br><br>"FIG. 13 shows a diagram of functional blocks associated with the management of dynamically assigned device identifiers. The Server 1301 has an application agent called an Identifier Manager (1303) which has access to a pool of device identifiers (1302). The Identifier Manager monitors timing information and determines when it is time to update a particular device's identifier. The time may be a regular interval, or a random generated time period by an algorithm…or a combination of both." '749 Pat., Col. 16:58–67.<br><br>"In any of the embodiments for delivery of the identifier in an IBSS beacon, it is possible to coordinate the change of those identifiers with the server 100. As the MAC address is always broadcast in any operation of a Bluetooth or Wi-FI link, the use of a MAC address as an identifier provides for an additional level of security for the device 601, 602, 603, when identifier is changed from time to time as devices may be detected and identities tracked using a constant MAC address." | |

| # | Claim Term | Plaintiff's Construction & Evidence | Defendants' Construction & Evidence |
|---|---|---|---|
| | | '749 Pat., Col. 10:26–35.<br><br>*See also* '749 Pat., 3:19-36; 6:6–11; 7:26–47; 9:3–22; 10:41–11:14; 14:15–33; 16:58–17:17 19:62-20:52, 22:5–67, and Figures 1, 3, 4, 7 and 13; App. No. 61/095,001 at 3, 5–6, 8, 9, 10–14, 17 (Ex. 1); App. No. 61/095,359 at pp. 20–24 (Ex. 2).<br><br>"Application: 7. *Computers* A computer program designed for a specific task or use; *application software for a missile guidance system.*" AMERICAN HERITAGE DICTIONARY (2011), at 86. (Ex. 8.) | |

Dated:  August 10, 2018

Respectfully submitted,

/s/ Chris J. Coulson

/s/ Richard S. Mandaro

Taylor F. Ford
Florida Bar No.: 0041008
Robyn M. Kramer
Florida Bar No.: 0118300
KING, BLACKWELL, ZEHNDER &
  WERMUTH, P.A.
25 E. Pine St.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
Email:  tford@kbzwlaw.com
Email:  rkramer@kbzwlaw.com

Denise M. De Mory (*Pro Hac Vice*)
John Beynon (*Pro Hac Vice*)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone:  (650) 351-7248
Facsimile: (415) 426-4744
Email:  ddemory@bdiplaw.com
Email:  jbeynon@bdiplaw.com

Chris J. Coulson (*Pro Hac Vice*)
BUNSOW DE MORY LLP
101 Brambach Rd.
Scarsdale, NY 10583
Telephone:  (646) 502-6973
Facsimile: (415) 426-4744
Email: ccoulson@bdiplaw.com

*Counsel for Plaintiff*
*Proxicom Wireless, LLC*

Gary T. Stiphany
Florida Bar No.: 342513
STIPHANY LAW
80 S.W. 8th Street, Suite 3100
Miami, FL 33130
Telephone: (305) 536-8882 Fax.
Facsimile:  (305) 579-4722
Email:  Gary@StiphanyLaw.com

Anthony F LoCicero (Pro Hac Vice)
Richard S. Mandaro (Pro Hac Vice)
Benjamin Charkow (Pro Hac Vice)
AMSTER, ROTHSTEIN &
  EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 336-8000
Facsimile: (212) 336-8001
Email:  ALocicero@ARElaw.com
Email: RMandaro@ARElaw.com
Email:  BCharkow@ARElaw.com

Benjamin L. Singer (*Pro Hac Vice*)
Evan Budaj (*Pro Hac Vice*)
SINGER BEA LLP
601 Montgomery St., Suite 1950
San Francisco, CA 94111
Telephone: (415) 500-6080
Fax: (415) 500-6080
Email: bsinger@singerbea.com
Email: ebudaj@singerbea.com

*Counsel for Defendant,*
*Macy's Retail Holdings, Inc*

1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on August 10, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Chris J. Coulson
Chris J. Coulson (*Pro Hac Vice*)